UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RANDY L WILSON,                    )
                                   )
              Plaintiff,           )
                                   )
       vs.                         )        No. 1:14-cv-01240-WTL-MJD
                                   )
CAROLYN W. COLVIN Acting           )
Commissioner of Social Security,   )
                                   )
              Defendant.           )

## REPORT AND RECOMMENDATION

Randy Wilson ("Plaintiff") requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his applications

for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C.

§§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge

recommends that the decision of the Commissioner be **AFFIRMED.**

## Procedural History and Background

Plaintiff filed applications for DIB and SSI on October 28, 2011, alleging an onset of

disability on August 4, 2011. [R. at 25.] He was 47 years old at the time of the alleged onset, and

he had past work experience as a warehouse worker, packer, forklift operator, and machine

feeder. [R. at 34.] He alleged disability due to lumbar degenerative disc disease, chronic pain

syndrome, bipolar disorder, anxiety disorder, and alcohol abuse. [R. at 27; *see also* Dkt. 14 at 4

(Pl.'s Br.)][1]

---

[1] Plaintiff recited the relevant factual and medical background in more detail in his opening brief. [*See* Dkt. 14.] The
Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 17.] Because these facts

Plaintiff's applications were denied initially on December 29, 2011 and on reconsideration on February 17, 2012. [R. at 25.] Plaintiff requested a hearing, which occurred before Administrative Law Judge ("ALJ") James Norris on February 14, 2013. [*Id.*] Plaintiff and his attorney were present at the hearing. [R. at 43.] Also present were vocational expert ("VE") Gail Corn, medical expert Dr. Lee Fischer, M.D., and medical expert Dr. Don Olive, Ph.D. [*Id.*] The ALJ determined that Plaintiff had not been under a disability at any time from the alleged date of onset through the date of the ALJ's March 14, 2013 decision. [R. at 36.] The Appeals Council denied Plaintiff's request for review on July 1, 2014, [R. at 5-10], rendering the ALJ's decision final. Plaintiff filed his complaint in this Court on July 24, 2014. [Dkt. 1.]

## **Applicable Standard**

To be eligible for SSI or DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is

---

involve Plaintiff's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate only specific facts as needed herein.
[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. . The Court, that is, "must be able to trace the ALJ's path of reasoning" from the

evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

## The ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2015. [R. at 27.] Applying the five-step analysis, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity ("SGA") since August 4, 2011, the alleged onset date. [*Id.*] At step two, the ALJ found that Plaintiff suffered from the severe impairments of lumbar degenerative disc disease, chronic pain syndrome, bipolar disorder, anxiety disorder, and alcohol abuse [*Id.*]

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed impairment. [R. at 28.] He evaluated Plaintiff's disc disease under Listing 1.04, but found that not all criteria of the Listing were satisfied. [*Id.*] He then evaluated Plaintiff's chronic pain syndrome under the criteria of Listings 1.02(A) and (B), but found that Plaintiff's functional ability exceeded the criteria of the Listing. [R. at 28-29.]

The ALJ next considered Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09. [R. at 29.] In doing so, he employed the SSA's special technique for evaluation of mental impairments. He thus considered the "Paragraph B" criteria and found that Plaintiff had "mild" restrictions in activities of daily living; "moderate" difficulties in social functioning; and "moderate" difficulties maintaining concentration, persistence, or pace. [*Id.*] He also found that Plaintiff had no episodes of decompensation of extended duration, [*id.*], and he concluded that the Paragraph B criteria were not satisfied. [R. at 30.] The ALJ then turned to the "Paragraph C"

criteria, but he found that the record contained insufficient evidence to establish that these criteria were satisfied. [R. at 30.]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). He concluded that Plaintiff could perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry twenty pounds occasionally, and ten pounds frequently; can stand and walk six hours of an eight-hour workday, and sit for six hours of an eight-hour workday; he cannot climb ladders, ropes, or scaffolds and only occasionally perform overhead work; and never work around unprotected heights. The work must be simple and repetitive and involve only minimal contact with the general public and co-workers.

[*Id.*] At step four, the ALJ concluded that this RFC did not allow Plaintiff to perform any of his past relevant work. [R. at 34.] The ALJ thus proceeded to step five, at which time he received testimony from the VE indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform jobs such as machine operator, cleaner, and hand packager. [R. at 35.] Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [R. at 35-36.]

## Discussion

Plaintiff argues that the ALJ made three errors. He first contends that the ALJ's RFC assessment was based on an improper analysis of the opinions from Drs. Fischer and Midla. [Dkt. 14 at 11.] He then argues that the ALJ's hypothetical questions did not properly orient the vocational expert to all of Plaintiff's functional limitations. [*Id.* at 14.] He finally contends that the ALJ erred in his evaluation of Plaintiff's chronic pain. [*Id.* at 15.]

### A. Consideration of Medical Opinions

In July 2012 and January 2013, treating physician Dr. Gary Midla, D.O., completed residual functional capacity questionnaires in which he opined that Plaintiff would be able to

perform less than sedentary work. [R. at 33, 488-89, 660-61.] At the hearing, Dr. Lee Fischer, M.D., testified as a medical expert that Plaintiff would be able to perform light work with certain additional restrictions. [R. at 33, 46.] The ALJ acknowledged Dr. Midla's treating relationship, but he gave Dr. Midla's opinions "[l]ittle weight." [*Id.*] The ALJ then gave Dr. Fischer's opinion "great weight." [R. at 33-34.] Plaintiff now attacks the ALJ's consideration of these opinions.[3] [Dkt. 14 at 11.]

Plaintiff first argues that the ALJ erroneously discounted Dr. Midla's opinion because the ALJ referred to Dr. Midla as Plaintiff's "treating chiropractor." [*Id.* at 11; *see also* R. at 33 ("Little weight can be given to the opinion[] of . . . Gary Midla, D.O., the claimant's treating chiropractor.").] As Plaintiff notes, the SSA divides medical sources into "acceptable" medical sources and other medical sources. SSR 06-03p. Osteopathic doctors such as Dr. Midla are "acceptable" medical sources; chiropractors, in contrast, are not. *Id.* Further, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" *Id.* Plaintiff thus maintains that the ALJ improperly discounted Dr. Midla's opinion because the ALJ was under the impression that Dr. Midla was not an "acceptable" medical source. [Dkt. 14 at 11-12.]

The ALJ's opinion does not support this contention. First, the ALJ expressly referred to Dr. Midla as a "D.O.," [R. at 33], and as a "treating **physician**," [R. at 32 (emphasis added)], such that he plainly knew that Dr. Midla was an osteopathic doctor who would qualify as an

---

[3] Plaintiff also briefly notes that the ALJ gave little weight to the opinion of consultative examiner Dr. Andrew Sonderman. [Dkt. 14 at 11.] The bulk of Plaintiff's argument, however, is devoted to the ALJ's treatment of the opinions from Dr. Midla and Dr. Fischer. [*See id.* at 11-14.] In addition, the ALJ discounted Dr. Sonderman's opinion for largely the same reasons that he discounted Dr. Midla's opinion. [R. at 33.] Because the ALJ's analysis of Dr. Midla's opinion was not erroneous, *see infra*, his analysis of Dr. Sonderman's was likewise not erroneous.

acceptable medical source. Second, the ALJ never stated that Dr. Midla was *not* an acceptable

medical source. [*See* R. at 33-34.] Thus, even if SSR 06-03p allows an ALJ to discount the

weight given to non-acceptable sources, the ALJ never invoked this rationale to discount Dr.

Midla's opinion. Finally, the ALJ gave numerous other reasons for discounting Dr. Midla's

opinion, none of which relied on his status as a "chiropractor." [*See id.*] The characterization of

Dr. Midla as a "treating chiropractor" thus seems to be a passing reference that had no bearing on

the ALJ's opinion, such that no reversible error occurred as a result of this characterization.

Plaintiff then argues that the ALJ erred because he did not evaluate Dr. Midla's opinion

under the SSA's six-factor rubric for analyzing opinions from treating sources. [Dkt. 14 at 13.]

These factors are 1) the length of the treatment relationship and the frequency of examination; 2)

the nature and extent of the relationship; 3) the amount of support for the opinion; 4) the

consistency of the opinion with the record as a whole; 5) the specialization of the treating source;

and 6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c);

*see also* SSR 96-2p. Plaintiff maintains that the ALJ must explicitly evaluate each factor, and he

faults the ALJ in this case for not doing so. [Dkt. 14 at 13; Dkt. 18 at 2-3.]

Plaintiff's argument misstates the law. "The Seventh Circuit has made clear that an ALJ

need not explicitly weigh every relevant factor to conclude that a treating physician's opinion

should be discounted." *Greathouse v. Colvin*, No. 1:14-CV-00805-JMS-DK, 2015 WL 506276,

at \*7 (S.D. Ind. Feb. 6, 2015) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013)

(approving ALJ's decision where it was "clear that [the ALJ] was aware of and considered many

of the factors outlined in 20 C.F.R. § 404.1527(c)")). As long as the ALJ "minimally

articulate[s]" the basis for his decision to depart from the treating physician's opinion, the Court

will not disturb that decision. *Kirby v. Colvin*, No. 1:13-CV-01087-TWP-MJD, 2014 WL

4908049, at *5 (S.D. Ind. Sept. 30, 2014) (citing *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir.2008)). The Court's review of this decision is "lax" and "very deferential" to the ALJ's determination. *Elder*, 529 F.3d at 415.[4]

The ALJ in this case satisfied this deferential standard of review. First, the ALJ began his discussion of the evidence by citing and describing the contents of SSR 96-2p and 20 C.F.R. § 404.1527, [R. at 31; *see also* R. at 33], both of which outline the factors used to evaluate the weight given to treating opinions. The ALJ was thus "aware of and considered" the appropriate factors for evaluating medical opinions. *Schreiber*, 519 F. App'x at 959. Next, the ALJ noted that Dr. Midla's opinion was "inconsistent with clinical findings" that showed "no ambulatory or motor dysfunction." [R. at 33.] He also specifically observed that the opinion conflicted with Dr. Midla's own clinical findings, [R. at 33], such that he had a strong basis for discounting Midla's conclusion. *See, e.g.*, *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is . . . internally inconsistent . . . the ALJ may discount it."). Finally, the ALJ noted that Dr. Midla's proposed restriction to less than sedentary work was inconsistent with Plaintiff's reports about his daily activities. [R. at 33.] Together, these observations indicate that the ALJ found that Dr. Midla's opinion was not supported by and was not consistent with the rest of the record, such that it was entitled to little weight. The Court can trace the path of this reasoning, and that is sufficient to satisfy the Court's deferential review.[5]

---

[4] Plaintiff's reply acknowledges this deferential standard, but he argues that a deferential standard is appropriate only after the ALJ considers the factors outlined in 20 C.F.R. § 404.1527(c). As explained below, it is clear that the ALJ in this case *did* consider these factors, and Plaintiff's argument thus does little to advance his position.

[5] In assessing Plaintiff's mental functioning, the ALJ also noted that Dr. Midla's opinion was entitled to less weight because mental illness was an area outside of his specialty. [R. at 34.] Plaintiff's reply contends this conclusion was erroneous because osteopathic doctors are authorized under state law to opine on mental health. [Dkt. 18 at 4 (citing Ind. Code § 25-22.5-1-1.1(a)).] Being authorized to opine on an issue, however, hardly qualifies a person as a "specialist" on that issue. *See, e.g.*, *Busking v. Colvin*, No. 11 C 1598, 2013 WL 4401380, at *11 (N.D. Ill. Aug. 14, 2013) (approving decision where ALJ noted that doctor "was an internist, not a psychologist or psychiatrist, so mental health issues were not his specialty"). The reference to Dr. Midla's lack of specialization in mental illness thus does not undercut the ALJ's opinion; instead, it merely confirms that the ALJ appropriately considered the

Plaintiff tries to salvage his argument with *Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir.

2003). There, the Seventh Circuit stated that a contrary opinion from a non-examining physician

is not, in and of itself, sufficient to discount the opinion of a treating physician. *Id.* at 470.

Plaintiff thus argues that the ALJ in this case could not reject Dr. Midla's opinion simply

because it was inconsistent with Dr. Fischer's opinion. [Dkt. 14 at 11-12.] As explained above,

however, the ALJ in this case did *not* discount Dr. Midla's opinion solely because it was

inconsistent with Dr. Fischer's opinion. Rather, he discounted the opinion because it was

internally inconsistent and unsupported by other evidence in the record. [*See* R. at 33 .] *Gudgel*

therefore does not indicate that the ALJ erred.

Plaintiff also maintains that, even if Dr. Midla's opinion was not entitled to controlling

weight, it was still entitled to "special deference." [Dkt. 14 at 19.] The SSA, however, makes

clear that when a treating source does not receive controlling weight, the ALJ must consider the

same factors outlined above in determining how much weight to grant the opinion. 20 C.F.R. §

404.1527(c)(2). Here, the ALJ found that Dr. Midla's opinion was inconsistent with and

unsupported by the record, such that he had an adequate basis to afford the opinion "[l]ittle

weight." [R. at 33.]

This is especially true because Dr. Midla's opinions took the form of "Residual

Functional Capacity Questionnaires." [R. 488-89, 660-61.] As the ALJ noted, [R. at 31 (citing

SSR 96-5p)], the assessment of a claimant's RFC is an issue reserved to the Commissioner. 20

C.F.R. § 404.1527(d)(2). The SSA "will not give any special significance" to a treating source's

---

factors outlined in the SSA's regulation. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

opinion on such issues, *id.* § 404.1527(d)(3), and so Plaintiff has no basis to conclude that Dr.

Midla's sedentary RFC assessment was entitled to "special deference."

Plaintiff finally attacks the reasoning that supported Dr. Fischer's opinion. The ALJ

wrote that Dr. Fischer "offered a reasonable explanation and rationale for his proposed

restrictions" on Plaintiff's functioning, but Plaintiff asserts that the record did not contain such

an explanation. [Dkt. 14 at 11.] Plaintiff thus contends that substantial evidence did not support

the ALJ's decision to incorporate Dr. Fischer's opinion in the ALJ's RFC analysis. [*Id.*]

The Court does not agree. Dr. Fischer testified in his capacity as an impartial medical

expert who was familiar with the SSA' regulations, [R. at 33, 46], and the ALJ was entitled to

rely on his opinion. *See, e.g.*, *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir.

2004) ("It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who

are also experts in social security disability evaluation."). Further, even if Dr. Fischer did not

offer a detailed account of his assessment of Plaintiff's functions, he still described Plaintiff's

impairments and stated that his evaluation was based on a review of the entirety of the record.

[R. at 45-46]. This supports the reliability of his conclusions, *see, e.g.*, *Flexner*, 361 F.3d at 448

("The fact that these physicians reviewed the entire record strengthens the weight of their

conclusions."), and the Court thus finds no error in the ALJ's decision to credit Dr. Fischer's

testimony.

Moreover, Plaintiff was represented by an attorney at the hearing. [R. at 43.] The ALJ

specifically gave the attorney an opportunity to question Dr. Fischer about his conclusions, but

the attorney declined to do so. [R. 47.] The ALJ was thus entitled to infer that Dr. Fischer's

opinion was reasonable, strengthening the ALJ's decision to afford that opinion more weight

than the opinion of Dr. Midla. *See, e.g.*, *Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir.

2009) (quoting *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir.1987))

("[T]he ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest

case for benefits.'"). For these reasons, the Court concludes that substantial evidence supported

the ALJ's decision to weigh the medical opinions in the record as he did, and remand is not

required to correct the ALJ's analysis of these opinions.

### B. The ALJ's Hypothetical Questions

Plaintiff next contends that the ALJ erred because the hypothetical question posed to the

vocational expert did not include a specific limitation on concentration, persistence, or pace

("CPP"). [Dkt. 14 at 14.] The general rule is that an ALJ's hypotheticals must "orient the VE to

the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir.

2010). Included among those limitations are any CPP restrictions. *Id.*

In this case, the ALJ found at step three of the sequential evaluation process that Plaintiff

had "moderate difficulties" in concentration, persistence, or pace. [R. at 29.] At the hearing, the

ALJ then asked the VE the following hypothetical question:

> So, let me ask you some hypothetical questions. First, assume a hypothetical
> individual of the age of 49 years with a GED and the past relevant work you've
> just described, who is limited to a range of light work, described as lifting 20
> pounds occasionally, ten pounds frequently; standing or walking six hours in an
> eight hour workday; sitting up to six hours in an eight hour workday; however,
> they're to do no climbing of ladders, ropes or scaffolds; and no work [around]
> unprotected heights; and overhead work can be done only occasionally; and
> additionally, the work should be simple and repetitive; involving minimal contact
> with the general public and peers, which as your heard Dr. Olive interpreted that
> as coworkers. So, with all of those restrictions, would any of the past relevant
> work be available?

[R. at 56.] The ALJ responded that such a person could not perform his past relevant

work, but that the person could still perform jobs that existed in significant numbers in

the national economy. [*See id.*] The ALJ thus concluded that Plaintiff was not disabled.
[R. at 35-36.]

As Plaintiff notes, the above hypothetical did not include any explicit limitation on concentration, persistence, or pace. [Dkt. 14 at 14.] Plaintiff then cites *O'Connor-Spinner* for the proposition that this omission was erroneous and requires remand. [*Id.*] As explained below, however, Plaintiff's argument is flawed for two reasons. First, the specific rule articulated in *O'Connor-Spinner* does not apply to the ALJ's hypothetical question in this case. Second, even if the rule does apply, the ALJ complied with the requirements of the rule.

### 1. Applicability of *O'Connor-Spinner v. Astrue*

The Seventh Circuit in *O'Connor-Spinner* considered a claim in which the ALJ listed a "limitation on concentration, persistence and pace" in "assessing [the claimant's] residual functional capacity." 627 F.3d at 617-18. The ALJ then asked the vocational expert a series of hypothetical questions that did not include a limitation on concentration, persistence, or pace. *Id.* The Seventh Circuit determined that the ALJ in that case erred. It noted that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.* at 619. Thus, if the claimant's RFC includes limitations on concentration, persistence, or pace, the ALJ's hypothetical questions should typically—though not always—include explicit reference to those limitations. *Id.* Because the ALJ in *O'Connor-Spinner* did not include such an explicit reference, the court reversed the ALJ's decision. *Id.* at 620-21.

Plaintiff claims that this case is analogous. [Dkt. 13-14.] He notes that the ALJ found that Plaintiff "suffered from moderate difficulties with regard to concentration,

persistence, or pace," and that the ALJ did not include a specific reference to these limitations in the above-quoted hypothetical question. [Dkt. 14 at 13.] He thus concludes that the ALJ here committed the same error as the ALJ in *O'Connor-Spinner*. [*Id.*]

Plaintiff's argument erroneously conflates the ALJ's step three determination with the ALJ's later RFC determination. At step three of the sequential evaluation process, the ALJ considered the "Paragraph B" criteria and found that Plaintiff had "moderate difficulties" on concentration, persistence, or pace. [R. at 29.] The SSA, however, makes clear that such step three determinations are not RFC assessments:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p. Based on this ruling, the fact that Plaintiff had "moderate difficulties" for the purposes of step three does not mean that Plaintiff also had moderate functional limitations that had to be included in the RFC. *Accord, e.g.*, *Rossenbach v. Colvin*, No. 13-CV-435-BBC, 2014 WL 1729096, at *2 (W.D. Wis. Apr. 30, 2014). (noting that ALJ must "translate[]" CPP limitations found at step two and three "into particular limitations" in the later RFC analysis); *Varga v. Colvin*, No. 12-C-1102, 2014 WL 1089740, at *3-4 (E.D. Wis. Mar. 19, 2014) (explaining at length that "the ALJ's findings with respect to the 'paragraph B' criteria of a Listing are not intended as the claimant's RFC").

This distinction is significant: As noted above, *O'Connor-Spinner* addressed a situation in which the ALJ found a "limitation on concentration, persistence and pace" in **assessing [the claimant's] residual functional capacity.**" *O'Connor-Spinner*, 627 F.3d at 617-18 (emphasis

added). Here, in contrast, the ALJ's RFC included no such explicit limitation. Thus, this was **not** a situation in which the ALJ's hypothetical erroneously omitted a CPP limitation from the claimant's RFC; instead, this was simply a case where the claimant's RFC had no CPP limitation to include in the hypothetical at all.

Perhaps recognizing this distinction, Plaintiff's reply attacks the ALJ's underlying RFC analysis. He first asserts that CPP limitations found at steps two and three generally should be "reflected" in the ALJ's RFC, such that the ALJ erred by omitting these limitations in this case. [Dkt. 18 at 7.] Plaintiff then asserts that even if the omission was not erroneous, the ALJ was still at fault because he did not explain his basis for the omission. [Dkt. 18 at 7.]

Certain cases support Plaintiff's statement that limitations found at step two and step three must be included in the RFC.[6] In *Kasarsky v. Barnhart*, the court indicated that limitations from these steps must be "incorporated" both in the RFC and the hypothetical posed to the ALJ. 335 F.3d 539, 544 (7th Cir. 2003). The court then faulted an ALJ whose RFC analysis did not "take[] into account [his] own earlier observation . . . that [claimant] suffered from *frequent* deficiencies of concentration, persistence, or pace." *Id.* (emphasis original). The case thus implies that, in some instances, omitting CPP limitations from the RFC can constitute error.

In *Kasarsky*, however, the court went on to acknowledge that ALJ could have avoided remand if he had provided "an explanation for [his] omission" of the CPP limitations. *Id.* If, for instance, the ALJ had explained why he believed that the claimant could have performed work-related tasks even with frequent deficiencies in concentration, persistence, or pace, then remand

---

[6] Plaintiff relies on *O'Connor-Spinner* for this proposition, but this reliance is misplaced. *See Simpson v. Astrue*, No. 1:12-CV-00163-SEB-DML, 2013 WL 1294517, at *4 n.3 (S.D. Ind. Mar. 28, 2013) ("Plaintiff also contends that the ALJ's RFC is not supported by substantial evidence because her moderate difficulties with concentration, persistence, or pace, which the ALJ found at Step Three, were not reflected in the RFC. *O'Connor–Spinner* does not address whether these limitations must also be referenced in an RFC.").

would not have been required. *See id.; see* also, e.g., *Warner v. Astrue*, 880 F. Supp. 2d 935, 942 (N.D. Ind. 2012) (finding no error where RFC omitted step three finding of moderate CPP difficulties).

In this case, the ALJ properly explained why his RFC did not explicitly incorporate any CPP limitations. First, the ALJ recounted the opinion of state agency consultant Dr. Joseph Pressner, who found "no significant limitations in the claimant's capacity to . . . maintain persistence and concentration." [R. at 34 (citing R. at 412-415).] Second, the ALJ received testimony during the hearing from medical expert Dr. Olive. [R. at 47-50.] That doctor addressed the limitations on Plaintiff's mental functioning and concluded that Plaintiff would likely be able to work only "in semi-isolation." [R. at 49.] The doctor did not include any functional limitations on concentration, persistence, or pace. [R. at 49-50.] The ALJ then gave this opinion "considerable weight" in constructing Plaintiff RFC. [R. at 34.] As a result, the ALJ's RFC ultimately included the limitation on interacting with others, [R. at 30], but did not include any explicit limitation on concentration, persistence, or pace. [*See id.*] Finally, the ALJ addressed Plaintiff's activities of daily living. He noted that Plaintiff "plays guitar, watches television, and attends church regularly," and that he has "no difficulty" doing so. [R. at 31.] The ALJ then observed that these activities "require . . . sustained attention, persistence, and pace," such that including specific CPP limitations in Plaintiff's RFC was unnecessary. [*See id.*]

Based on this explanation, the Court can "trace the ALJ's path of reasoning," *Clifford*, 227 F.3d at 874, from his step three determination to his later RFC analysis. Further, this explanation satisfies *Kasarsky's* requirement that an ALJ explain his basis for omitting earlier findings of CPP limitations. As a result, the ALJ's decision not to include any such explicit limitations was not erroneous. Further, because the ALJ's RFC did not include any explicit

limitations on concentration, persistence, or pace, the ALJ did not err by failing to include any explicit reference to such limitations in his hypotheticals.

### 2. Exceptions to *O'Connor-Spinner's* Rule

Next, even if *O'Connor-Spinner* did apply to Plaintiff's case, the ALJ fulfilled the requirements of that case. In *O'Connor-Spinner*, the Seventh Circuit stated the general rule that hypotheticals should address CPP limitations in a claimant's RFC, but the court also carved out certain exceptions to this rule. 627 F.3d at 619-20. Of relevance in this case, the Seventh Circuit has approved hypotheticals "omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* at 619. As an example, if a claimant has CPP limitations resulting from stress or panic disorder, an ALJ may omit CPP limitations from his hypotheticals as long as he also restricts claimant to low-stress work. *Id.*

This case fits squarely within that exception. The only bases for the CPP limitations that the ALJ described at step three were "paranoia and moderately impaired judgment." [R. at 29.] The ALJ's RFC and hypothetical question then restricted Plaintiff to having "minimal contact with the general public and co-workers" and to "simple and repetitive tasks." [R. at 30; *see also* R. at 56.] This first limitation—minimal contact—addresses Plaintiff's "paranoia" by preventing the sort of contact with others that could aggravate Plaintiff's condition. The second limitation— simple and repetitive tasks—addresses Plaintiff's "impaired judgment" by obviating the need for Plaintiff to make any difficult or complex judgments while working.[7] As such, the ALJ's

---

[7] *O'Connor-Spinner* makes clear that a restriction to simple and repetitive tasks will not in all cases satisfy the requirement that the ALJ orient the VE to limitations on CPP. 627 F.3d at 620. As already, noted, however, *O'Connor-Spinner* does allow for hypotheticals that clearly exclude the sorts of tasks that aggravate the claimant's limitations. *Id.* at 619. In this case, it is clear that a restriction to simple and repetitive tasks *does* exclude situations in which Plaintiff's "impaired judgment" would pose difficulties, such that reliance on this restriction was proper. *See id.*

hypothetical question plainly excluded the sort of work that would aggravate Plaintiff's CPP limitations, and the ALJ did not err in relying on the VE's response to the hypothetical. *See O'Connor-Spinner*, 627 F.3d at 619.

### C. Evaluation of Chronic Pain

Plaintiff testified before the ALJ that he experienced chronic pain in his shoulders, hips, and back, and that the pain made it difficult to sit, stand, or walk. [R. at 32, 52-54.] The ALJ found that these complaints were "not entirely credible." [R. at 32.] Plaintiff now contends that the ALJ improperly evaluated his credibility and violated SSR 03-02p in analyzing his complaints of pain. [Dkt. 14 at 15-18.]

When evaluating a claimant's subjective complaints, an ALJ must consider factors such as a claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the effects of medication; the effects of treatment other than medication; and any measures other than medication or treatment that the claimant has used to alleviate his symptoms. 20 C.F.R. § 404.1529(c). The ALJ should also consider whether the Plaintiff's complaints are consistent with objective medical evidence. *Id.* § 404.1529(a). The Court's review of this analysis is deferential. "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (citation and quotation marks omitted).

The ALJ's opinion in this case specifically addressed the factors outlined above, [R. at 33-34], but Plaintiff asserts that the ALJ placed too much weight on the lack of objective medical evidence supporting Plaintiff's complaints. [Dkt. 14 at 16.] As Plaintiff notes, a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the

symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p. Here, however, the ALJ did **not** discount Plaintiff's complaints "solely" because of the lack of objective evidence; instead, he considered the "overall evidence of record," [R. at 32], and explained that the factors outlined in 20 C.F.R. § 404.1529(c) also supported his analysis. [R. at 33.] He thus properly treated the lack of objective evidence as one factor among many to be assessed in evaluating Plaintiff's credibility. *See* SSR 96-7p ("[T]he adjudicator must consider the entire case record[.]"); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[The claimant's] subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.").

Plaintiff then argues that the ALJ placed too much weight on his activities of daily living. [Dkt. 14 at 17.] The ALJ noted that Plaintiff could perform household chores, drive to appointments, attend church, go shopping, and play guitar. [R. at 33.] Each of these activities would naturally require Plaintiff to sit, stand, or walk, such that the ALJ properly concluded that the activities were not consistent with Plaintiff's complaints at the hearing. *See, e.g.*, *Olsen v. Colvin*, 551 F. App'x 868, 875-76 (7th Cir. 2014) (citations omitted) ("It was appropriate for the ALJ to consider Olsen's daily activities. . . . The ALJ correctly compared Olsen's daily activities (which included cooking, reading, shopping for groceries, watching television, and vacuuming) to her testimony that she has a very limited ability to sit, stand, and walk and concluded that Olsen was not credible as to the intensity and persistence of her symptoms.").

In reply, Plaintiff acknowledges that daily activities are a valid consideration in the ALJ's credibility analysis, but Plaintiff argues that the ALJ should have more fully explained the inconsistency between his complaints and his activities. [Dkt. 18 at 5.] As Plaintiff notes, the Seventh Circuit has often cautioned that a "critical difference" exists between daily activities and

full-time work, such that the ability to do the former does not necessarily imply the ability to do the latter. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Plaintiff thus maintains that the ALJ needed to explicitly explain how Plaintiff's activities supported his ability to work. [Dkt. at 17.]

The ALJ in this case, however, did not make the sort of logical leap faulted in cases such as *Bjornson*. Rather than conclude that Plaintiff could work because he could engage in daily activities, the ALJ simply stated that Plaintiff's daily activities were "highly inconsistent with the allegations made at the hearing," [R. at 33], such that Plaintiff's complaints were not fully credible. This was entirely proper. *See, e.g.*, *Olsen*, 551 F. App'x at 875 ("It was appropriate for the ALJ to consider [the claimant's] daily activities."). Moreover, even if the ALJ could have provided a more detailed analysis of Plaintiff's activities, his failure to offer one is not fatal to his opinion. The ALJ need only minimally articulate the basis for his credibility determination, *see, e.g.*, *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013), and the Court will not disturb his opinion simply because it could have been more exhaustive. *See, e.g.*, *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) ("It is true the ALJ could have been more specific as to which physical and mental impairments and symptoms he thought were exaggerated, as opposed to generally referencing large-scale portions of Pepper's daily-activity testimony, but that fact does not change the result here. The ALJ's explanation was sufficient to reasonably conclude that Pepper exaggerated the effects of her impairments.").

Further, the ALJ's discussion of daily activities was only one factor in his credibility analysis. In accordance with 20 C.F.R. § 404.1529(c), the ALJ addressed 1) the effects of Plaintiff's medication and 2) evidence of measures taken to alleviate Plaintiff's symptoms. [R. at 33.] He noted that Plaintiff's medication caused no side effects that would limit Plaintiff's ability

to function, and he noted that although Plaintiff stated that he sometimes lies down to relieve pain, there was no evidence in the record indicating this was necessary. [*Id.*] The ALJ then turned to factors that could precipitate or aggravate Plaintiff's pain. [*Id.*] Here, he credited Plaintiff's statements about his symptoms and included RFC limitations to address Plaintiff's complaints. [R. at 32 ("The included limits for overhead work and postural and environmental restrictions are designed to address symptoms and limitations associated with chronic pain syndrome (i.e. subjective reports of persistent shoulder, hip, and right groin pain).").] Based on this analysis, the ALJ properly addressed the factors described in 20 C.F.R. § 404.1529. Thus, even if the ALJ's consideration of Plaintiff's daily activities **had** been erroneous, this error in the analysis of a single factor would not require remand for a new evaluation of Plaintiff's credibility *See, e.g.*, *Tilley v. Colvin*, No. 1:13-CV-01775-TWP-DM, 2015 WL 926178, at *5 (S.D. Ind. Mar. 3, 2015) ("It is not necessary that the ALJ recite findings on every factor described in SSR 96–7p[.]"); *Dailey v. Colvin*, No. 1:14-CV-00294-SEB, 2015 WL 331859, at *6 (S.D. Ind. Jan. 21, 2015) ("Though the ALJ mischaracterized some of Dailey's activities, the credibility determination was not patently wrong. . . . [T]he ALJ's discussion of Dailey's living activities was one of several factors considered in determining Dailey's credibility assessment.").

     Plaintiff then turns to SSR 03-2p. [Dkt. 14 at 17.] That ruling provides in relevant part:

> Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times. These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered.

SSR 03-2p. Plaintiff argues that the ALJ violated this ruling by failing to consider the effect that Plaintiff's pain and pain medication may have had on Plaintiff's mental functioning. [Dkt. 14 at 17.]

This argument ignores the fact that the ALJ did consider these factors. First, the ALJ discussed Plaintiff's mental functioning and observed that mental status testing showed "intact mental function, with full orientation, intact attention, memory and fund of information." [R. at 33.] He then stated that this finding helped show that "the claimant's allegations with regard to the location, duration, frequency, and intensity of his **pain** or other symptoms are uncorroborated by the overall evidence of record." [*Id.* (emphasis added).] The ALJ thus discussed Plaintiff's mental functioning in conjunction with his pain and found that the pain evidently did not affect Plaintiff's attention, memory, or orientation. Second, the ALJ specifically noted that "[t]here is no evidence of adverse medication side effects," [R. at 33], such that Plaintiff's medication would not have affected his mental functioning. Indeed, the ALJ even included restrictions in Plaintiff's RFC to account for "**potential** effects of prescribed medications." [R. at 31 (emphasis added).] The ALJ thus plainly considered how Plaintiff's pain and pain medications could affect his functioning, and he did not violate SSR 03-2p.

Plaintiff finally faults the ALJ for allegedly ignoring the opinion of Dr. Joseph Pressner. [Dkt. 14 at 18.] Plaintiff notes that Dr. Pressner found that Plaintiff's allegations were credible, and Plaintiff contends that the ALJ was obligated to explain the inconsistency between Dr. Pressner's positive credibility determination and the ALJ's partially negative credibility determination. [*Id.* (citing SSR 96-8p).]

The ruling on which Plaintiff relies states that an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Here, however, the record did not contain "any material inconsistency." Dr. Pressner stated that Plaintiff's complaints regarding his mental functioning were credible, [R. at 414], in that Plaintiff's statements supported the doctor's opinion that Plaintiff would have little difficulty maintaining concentration, persistence, or pace, but would have moderate difficulty in social interaction. [R. at 412-13.] The ALJ then incorporated these findings in his RFC, [*see* R. at 30], such that the ALJ's ultimate RFC determination was not inconsistent with Dr. Pressner's opinion. As a result, the ALJ did not violate SSR 96-8p, and it is unnecessary to remand the case for the ALJ to address this ruling.

## Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that Randy Wilson is not entitled to Disability Insurance Benefits or Supplemental Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  04/23/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov